**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SHAWN HENRY SCRIVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          Case No. 4:21-CV-355 SRC |
| | ) |
| ADVANCED CORRECTIONAL | ) |
| HEALTHCARE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Shawn Henry Scrivens brings this action under 42 U.S.C. § 1983, alleging that he received deliberately indifferent medical care while detained at Phelps County Jail as an insulin-dependent diabetic.  The matter is before the Court on Plaintiff's [2] Motion to Use Existing Forma Pauperis and Certified Account Printout on File with the Court, which the Court will construe as a motion to proceed *in forma pauperis*, [3] Motion for Leave to Enter Exhibits, [5] Motion to Amend/Correct the Record, and [6] Motion for Court to Order Evidence be Preserved by Defendants.  Having reviewed the motion to proceed *in forma pauperis* and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $39.87.  *See* 28 U.S.C. § 1915(b)(1).  Furthermore, after reviewing the complaint, the Court will direct Plaintiff to file an amended complaint, in compliance with the instructions provided below, on a court-provided form.

## I.    Background

On his complaint, Plaintiff stated that he filed a previous action "dealing with the same facts involved in this action" in this Court in August 2020, but that he voluntarily dismissed that action because his "[c]laims were not correctly listed in prior law suit [sic]."  Doc. 1 at 15.

Furthermore, in a letter attached to his complaint in this matter, Plaintiff states in reference to his dismissed lawsuit: "I filed to dismiss that law suit [sic] so that I may refile against some of the same defendants and clearly explain how each is involved and responsible." Doc. 1-2 at 1.

A review of the Court's records indicated that Plaintiff filed a § 1983 action against five defendants associated with Phelps County Jail in August 2020. *Scrivens v. Lesenbee*, No. 4:20-cv-1127-SRW (E.D. Mo. Aug. 21, 2020). In that suit, Plaintiff alleged that he received deliberately indifferent medical care for his diabetes while he was being held as a pretrial detainee at the Phelps County Jail. The Court reviewed Plaintiff's complaint under 28 U.S.C. § 1915(e) and dismissed all the claims asserted except the claim against Dr. Burris in his individual capacity for deliberate indifference. Doc. 6. After that partial dismissal, Plaintiff attempted to amend his complaint multiple times. *See* Docs. 14, 19. However, the Court denied his multiple requests because Plaintiff failed to include his proposed amended complaints with his motions to amend, despite the fact that the Court sent him multiple blank form complaints for completion. *See* Docs. 15, 21. As a result, on March 15, 2021, Plaintiff filed a motion to voluntarily dismiss the case "due to the poor initial filing of his complaint." Doc. 24.

Just a week after Plaintiff's voluntary dismissal in that matter, Plaintiff filed the instant suit – a new § 1983 action alleging deliberately-indifferent medical care regarding his diabetes against many of the same defendants named in the prior suit. Because the Court was not certain whether Plaintiff intended his new filing to be a new civil action or whether he intended it as a proposed amended complaint for his previous suit, the Court issued an Order on June 24, 2021. Doc. 9. In that Order, the Court directed Plaintiff to clarify in writing, within thirty (30) days, whether he wanted to proceed with this action or whether he would pursue his claims in his previously filed § 1983 action. The Court explained that pursuing the new action would require the payment of additional filing fees.

On July 23, 2021, the Court received a response to the Court's Order.  Doc. 10.  Plaintiff explained that he would like this § 1983 matter to proceed as filed, "without being considered an amendment to the previous lawsuit."  *Id.* at 2.  Plaintiff notes that he has paid all filing fees for his previous suit, and he wishes to proceed *in forma pauperis* in this matter, knowing that additional filing fees will be required.  *Id.* at 1-2.

## II.    Plaintiff's Filings

### Motion to Proceed *In Forma Pauperis* (Doc. 2) and Initial Partial Filing Fee

The Court construes Plaintiff's "Motion to Use Existing Forma Pauperis and Certified Account Printout on File with this Court," as a motion to proceed *in forma pauperis* in this matter. Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.   28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is currently being held at Moberly Correctional Center ("MCC").  At the time of complaint filing, he requested *in forma pauperis* status in this matter and asked the Court to consider the financial information he submitted to the Court in case no. "4:20-CV-1127."  Doc. 2 at 1.  However, a few weeks later, Plaintiff filed an affidavit in support of his request to proceed

*in forma pauperis*, Doc. 7, and a certified inmate account statement, Doc. 8.  This more recent financial information will be considered by the Court.

According to the Affidavit, the only money Plaintiff has received in the past twelve months is "a small amount" from his mother.  Doc. 7 at 2.  Plaintiff's inmate account statement shows average monthly deposits of $199.33, over a six-month period.  Doc. 8.  The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $39.87, which is twenty percent of Plaintiff's average monthly deposit.

## The Complaint (Doc. 1)

Plaintiff is currently incarcerated at Moberly Correctional Center ("MCC"); however, the claims brought in this case are in regard to his time as a pretrial detainee at Phelps County Jail. Plaintiff alleges Defendants violated his civil rights under 42 U.S.C. § 1983, when he received inadequate medical care for his diabetes while detained at the Jail.  Plaintiff names six defendants: (1) Advanced Correctional Healthcare, Inc. (contracted medical provider for the Jail); (2) Dr. Unknown Burris; (3) Dr. Karen Doerry; (4) Nurse Lisa Kelly; (5) Rick Lisenbe (Phelps County Sheriff); and (6) Matt Schultz (Phelps County Jail Administrator).  Doc. 1 at 1-4.  All of the individual defendants are named in both their individual and official capacities.

Plaintiff states that Defendant Advanced Correctional Healthcare, Inc. is "contracted by the Phelps County Jail to provide healthcare/treatment for all inmates in that jail."  *Id.* at 5. According to Plaintiff, there are "two medical agents listed" to treat inmates at the Jail on a rotational basis: Defendants Dr. Unknown Burris and Dr. Karen Doerry.  The two doctors are "on-call" to respond to medical questions from Jail personnel via phone or email, but the doctors do not have an office at the Jail nor do they make "rounds" to check on Jail inmates.  Plaintiff notes

that he never saw either doctor in person while detained at the Jail.  There are also two nurses[1] at the Jail "for minor procedures such as sick-call, etc."  *Id.*

Plaintiff avers that Advanced Correctional "depends on random jail deputies" to distribute medications to inmates multiple times a day, including overseeing insulin testing and injections by inmates.  Plaintiff argues that these "random jail deputies" are not "certified" or "qualified to handle and pass out medication."  Plaintiff also complains that it "usually" takes "several weeks" to see a nurse after submitting a "sick-call."  Plaintiff does not state a specific occasion in which he had this problem, but he argues that the situation leads inmates to "just suffer through [a] medical problem without any type of timely, appropriate care."  *Id.*

Plaintiff alleges that when he was arrested by a Phelps County Sheriff deputy on August 17, 2018, his mother gave the arresting officer "a complete 90 day supply of [his] insulin, insulin syringes, and bloodsugar testing meter."  *Id.*  According to Plaintiff, he received his regular insulin injections multiple times a day for "the approximate first six weeks" of his detention at the Jail.  *Id.* at 6.  However, he complains about difficulty in "receiving diabetic meals and an evening snack bag," which he asserts is necessary to managing his diabetes.  He states that he "made medical staff well aware of this problem but they failed to accommodate."  *Id.*

On an unknown date, Plaintiff asserts that he became ill due to the "indifference" of the medical staff.  As a result, the Jail deputy who was dispensing medicine "decided to inject [Plaintiff] with a massive dose of a fast acting [sic] insulin known as REG."  Plaintiff states that the Jail deputy made this decision to inject Plaintiff with the 30-unit dose "without authority or any type of medical supervision."  *Id.*

---

[1] Plaintiff does not name one of these two nurses as Defendant Nurse Lisa Kelly, but presumably she is one. Plaintiff describes Nurse Kelly as a nurse employed by Advanced Correctional Healthcare, Inc and he complains about her handling of grievances filed at Phelps County Jail.  Doc. 1 at 4, 6.

According to Plaintiff, the insulin injection caused his "bloodsugar levels to bottom out" and when a Jail deputy was doing a security check approximately an hour later, he found Plaintiff unresponsive on his bed.  Jail personnel contacted the "on-call" doctor.  Plaintiff is unsure which doctor defendant was contacted.  Plaintiff is also unsure as to whether the doctor was informed that Plaintiff had received the 30-unit insulin injection.  However, the doctor gave "a verbal order to discontinue [Plaintiff's] insulin altogether."  *Id.* at 7.  Plaintiff argues that the Jail should have immediately contacted emergency services when he was found unresponsive, and that the doctor who was contacted should have immediately come to the Jail to assess the Plaintiff or should have directed the Jail to contact emergency services.  *Id.* at 6-7.

Plaintiff argues that the doctor's decision to discontinue insulin constitutes medical indifference.  According to Plaintiff, the on-call doctor "should [] know that stopping an insulin dependent diabetic's insulin may cause permanent damage to the diabetic or even death."  *Id.* at 7. At some point, Plaintiff's mother tried to contact Defendant Matt Schultz, the Phelps County Jail Administrator, to advocate on behalf of Plaintiff, but Plaintiff asserts that Schultz would not personally answer his phone.  *Id.* at 8.  Plaintiff states that sick-call requests were useless because they took too long to be answered, so he filed formal grievances at the Jail "about his urgent need for insulin."

According to Plaintiff, his "health was quickly deteriorating and he was terribly sick from his lack of insulin."  *Id.*  "After many weeks of begging for his insulin," Plaintiff states that he "began losing sight in his left eye due to lack of treatment and insulin."  Plaintiff describes his vision problem as a "permanent side effect[] of untreated diabetes" that Advanced Correctional employees were aware of and that could have easily been avoided if they had provided insulin. Instead, Plaintiff experienced "needless suffering and permanent damage to [his] organs/eyes."  *Id.* Plaintiff lists his injuries as diabetes "exacerbated tremendously;" permanent loss of sight in left

eye; and permanent damage to internal organs.  *Id.* at 10.  Plaintiff states that he had no other alternative than to accept a plea agreement on his pending criminal charges that "he was not guilty of committing," so that he could be transferred to the care of the Missouri Department of Corrections ("MDOC") and obtain medical treatment and insulin "before more permanent damage occurred or he died."  *Id.* at 9.

Plaintiff asserts that his medical emergency resulted from a "failure to provide adequate medical staff at the jail" by Advanced Correctional.  *Id.* at 6.  He also complains that Advanced Correctional was "neglectful in supervising their medical agents and ensuring they were providing adequate medical care to inmates at the jail" and failing to hold the agents accountable.  *Id.* at 7. He alleges that Advanced Correctional personnel "were well aware of the situation" from his complaints, but they "simply allowed [Plaintiff] to languish in this state and suffer" even though the problem could have been "easily treated."  *Id.* at 8.  Furthermore, Plaintiff asserts that Advanced Correctional employees' actions of discontinuing his insulin without a medical exam and failing to provide him insulin once they received his grievances, were both negligent and deliberately indifferent.  *Id.*

As to Defendant Matt Schultz, the Phelps County Jail Administrator, Plaintiff states that Schultz "failed to be diligent" in supervising the daily operations at the Jail, including making sure that medical care and treatment provided by Advanced Correctional employees is competent and timely, and that Advanced Correctional is fulfilling its contractual obligations to the Jail.  *Id.* Plaintiff asserts that Schultz was not supervising the medical staff appropriately and that he should not allow "random jail personel [sic] to conduct med pass/insulin," but instead, this should be conducted "by certified medical personel [sic] provided by [Advanced Correctional]."  *Id.*

As to Defendant Sheriff Lisenbe, Plaintiff alleges that the Sheriff is "ultimately responsible … to ensure the jail is [run] smoothly" and that Jail Administrator Schultz "either failed to inform

Sheriff Lisenbe of the problems or Sheriff Lisenbe was informed and failed to correct the problems in his jail." *Id.* at 7-8.

Finally, Plaintiff asserts Nurse Kelly responded to his grievances filed at the Jail "with either a '*' to clear the screen, false information, or [she] fail[ed] to respond altogether." *Id.* at 6.

For relief, Plaintiff seeks damages totaling sixteen million. *Id.* at 12.

### Motion for Leave to Enter Exhibits (Doc. 3)

Plaintiff submitted to the Court, in the same envelope as his complaint, a motion for leave to enter exhibits.  Doc. 3.  Attached to the motion are twenty-six (26) exhibits, labelled A through Z, which are all single-page printouts from "The Edge Exchange" – presumably the Jail's kiosk system for submitting grievances.  Docs. 3-1, 3-2.

Seven of the grievances, dated between September 21 and October 8, 2018, are complaints about not receiving an evening diabetic snack bag.  Doc. 3-2 at 17-23.  Defendant Nurse Kelly responded to six of these grievances by informing Plaintiff that the doctor had not ordered him a night snack.  Thirteen of the grievances, dated between October 18 and November 29, 2018, are complaints about the discontinuance of his insulin injections.  *Id.* at 3-6, 8-16.  Defendant Nurse Kelly responded to eleven of these grievances.  Multiple times she directed Plaintiff to fill out a sick-call request form in order to be seen by a doctor or medical staff.  *Id.* at 5, 16.  In response to later repetitive requests, Kelly often responded with "see prior reply."  *Id.* at 8, 11, 13.  The remaining six grievances do not seem to relate to the issues of this case.[2]

Based on the grievance dates, it seems that Plaintiff's twice-daily insulin injections were discontinued on October 18, 2018, per a doctor's order.  *See id.* at 6 (on October 19, 2018, Plaintiff

---

[2] Three of the other grievances were complaints about charges and costs for medical care and supplies.  The Court notes that it is constitutionally permissible for a detention center to charge a detainee the cost of medical care.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983). ("[A]s long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.").

complained about not receiving insulin for "1 a half days"); 4 (non-defendant response to grievance states that insulin was discontinued by doctor).  Plaintiff repeatedly complains that his insulin should not have been discontinued without bloodwork or an "A1C"[3] test, and that his blood sugar levels are no longer being regularly monitored.  *Id.* at 8-13.  On October 28, 2018, Plaintiff mentions "permently scaring [his] eyes" and on November 29, 2018, he mentions "loss of sight in left eye." *Id.* at 11, 16.

Plaintiff need not seek permission from the Court to attach exhibits to a complaint.  Under the Federal Rules, attachments to the complaint are treated as part of the pleadings.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  As such, the Court grants Plaintiff's motion for leave to enter exhibits. These exhibits are appropriately considered by the Court in assessing whether this action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted).

### Motion to Correct the Record (Doc. 5)

A few days after this case was filed, Plaintiff submitted a motion to correct the record in which he asks the Court to correct the record to reflect that Defendant Dr. Unknown Burris is actually Dr. Paul Burris.  Doc. 5 at 1.  The Court grants this motion and directs the Clerk of Court to update the docket sheet accordingly.

### Motion for Court to Order Evidence be Preserved by Defendants in their Official and Individual Capacities (Doc. 6)

In this motion, Plaintiff requests that the Court order the Defendants to "preserve all hard copy medical records an[d] electronic medical files concerning Plaintiff, beginning August 17,

---

[3] According to the American Diabetes Association, the A1C is a "relatively simple blood test" that can be used to identify prediabetes, diagnose diabetes, and "to monitor how well your diabetes treatment is working over time." *American Diabetes Association: Understanding A1C*, https://www.diabetes.org/a1c.

2018."  Doc. 6 at 1.  Plaintiff's stated reason for the request is that the Defendants "have a history of concealing and/or destroying records."  *Id.* at 2.  Plaintiff does not request that the records be produced at this time, he just wants a Court order that the records will be preserved.

The Court denies Plaintiff's motion.  The Court has not yet issued a case management order or authorized discovery in this case.  Moreover, Plaintiff has not presented any factual allegations, beyond his bare assertions, that Defendants will improperly dispose of potential evidence.  Finally, Defendants are under an obligation to preserve potentially relevant evidence under their control.  Any failure to preserve such evidence might lead to sanctions for spoliation of evidence. *See Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).

## III.    Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## IV.    Discussion

Based on a careful review and liberal construction of the filings before the Court, the Court finds that Plaintiff states some very-serious allegations of deliberately-indifferent medical care, but he has not adequately alleged all claims to withstand review under 28 U.S.C. § 1915(e)(2). Because Plaintiff is self-represented, the Court will give him another opportunity to cure his pleadings deficiencies by filing an amended complaint.  Plaintiff should consider the following pleading problems when filing his amended complaint.

### Deliberately-Indifferent Medical Care Pleading Requirements

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  Thus, while Plaintiff's claims fall under the Fourteenth Amendment, this distinction "makes little difference" in evaluating his claims. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to

establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on an Eighth-Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

In this case, Plaintiff makes very-serious allegations of deliberately-indifferent medical care and treatment for his insulin-dependent diabetes. There is no doubt that conditions resulting from failure to treat diabetes is a serious medical need. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir.1999). However, Plaintiff's pleadings are contradictory as to when Plaintiff was

diagnosed with this medical condition, and when he began using insulin to control it.  At one point, Plaintiff describes himself as a "insulin dependent diabetic relying on multiple daily insulin injections to control his diabetes" since "approximately 2020."  Doc. 1 at 5.  On the other hand, in multiple grievance exhibits, Plaintiff states that as of 2018, he had been an insulin-dependent diabetic for eight (8) years.  Doc. 3-2 at 3, 8.  Plaintiff needs to clarify in his amended complaint his medical diagnosis and condition during the 2018-2019 time at issue.  To state a deliberate indifference claim, it must be clear from the pleadings that Plaintiff suffered from the serious medical need of insulin-dependent diabetes during his time as a pretrial detainee at Phelps County Jail.

Plaintiff should also clarify in his amended complaint how long he went without insulin to treat his diabetes.  Based on the grievance exhibits, it appears that his insulin was discontinued on October 18, 2018, at the Phelps County Jail.  *See* Doc. 3-2 at 3-6.  Plaintiff asserts that he was forced into pleading guilty on his pending criminal charges in order to get medical care from the MDOC.  Independent review of Plaintiff's criminal case on Missouri Case.net, the State of Missouri's online docketing system, shows that Plaintiff pleaded guilty on March 7, 2019, and was transferred to the custody of the MDOC that day.  *State v. Scrivens*, No. 18PH-CR01369-01 (25th Jud. Cir., Sep. 15, 2018).  Plaintiff should clearly state in the factual allegations of his amended complaint the time period in which he was denied insulin at Phelps County Jail.

### Defendant Nurse Lisa Kelly[4]

Assuming Plaintiff's amended complaint clarifies his serious medical need during the relevant time period, the factual allegations must also support the assertion that Defendants

---

[4] The Court notes that Plaintiff lists this Defendant as "Nurse Lisa Kelly" yet the grievance exhibits spell her name as "Nurse Kelley."  *See* ECF Nos. 1 at 1, 4; 3-2.  The spelling provided by Plaintiff is used throughout this Order but Plaintiff should clarify this spelling in his amended complaint.

actually knew of Plaintiff's medical need and they deliberately disregarded it.  As to Nurse Kelly, Plaintiff's only allegation against her in the 'Statement of Claim' section of his complaint is that she fails to respond, or provides inadequate responses, to grievances.  Doc. 1 at 6.  The exhibits indicate that Nurse Kelly reviewed and responded to multiple of Plaintiff's grievances concerning diabetic snack bags, discontinuance of insulin, and lack of blood sugar monitoring between September and November 2018.  Nurse Kelly was the person who responded to Plaintiff's November 29, 2018 grievance filing stating that he was experiencing "loss of sight in left eye," so she was well aware of his deteriorating health condition.  Doc. 3-2 at 16.  As such, the pleadings sufficiently demonstrate that Nurse Kelly was aware of and disregarded Plaintiff's medical needs.

### Defendant Doctors Paul Burris and Karen Doerry

The factual allegations concerning the two doctor defendants who treat Phelps County Jail inmates are less clear.  Plaintiff seems to be asserting that the doctor defendants were deliberately indifferent in the discontinuance of his insulin in October 2018, but also in their failure to restart the insulin or to physically exam him thereafter.[5]

Understandably, Plaintiff is not currently aware which doctor was "on-call" when a jail deputy contacted one of the doctors about Plaintiff's unresponsive state and that doctor discontinued Plaintiff's twice-daily insulin injections without a medical exam or blood work.  However, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must

---

[5] To the extent that Plaintiff is also asserting that defendant doctors acted negligently, claims of mere negligence do not rise to the level of deliberate indifference.  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable alone under the Eighth Amendment).

allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

Because Plaintiff does not know which doctor was responsible for the discontinuation of his insulin, he cannot simply name both Advanced Correctional doctors who work at Phelps County Jail.  Until medical records reveal which doctor made this medical decision, these allegations should be made on Plaintiff's amended complaint against an Unknown Doctor employed by Advanced Correctional Healthcare, Inc. at the Phelps County Jail.  Once discovery reveals the doctor's name, Plaintiff can file a motion to correct the record.

Furthermore, to the extent Plaintiff is attempting to allege that both doctors are responsible for failing to restart his insulin injections after they were improperly discontinued, the factual allegations of the pleadings do not support such a claim.  There is no indication that Plaintiff made both doctor defendants aware of his medical emergency.  Although Plaintiff filed many grievances through the Jail kiosk that were responded to by Nurse Kelly, Plaintiff was repeatedly told by Kelly to file a sick-call request so he could be seen by a doctor.  There is no evidence that Plaintiff ever made a request to see a doctor.  Also, once Plaintiff's insulin was discontinued on doctor's orders, there is no evidence in the record that Plaintiff ever had any contact with either Jail doctor.  As such, there are no facts indicating that either doctor actually knew of and deliberately disregarded Plaintiff's continuing medical need for insulin (except the doctor who discontinued the insulin).  The factual pleadings, as currently stated in the complaint, fail to state a claim specifically against either Defendant Dr. Paul Burris or Dr. Karen Doerry.

### Defendant Advanced Correctional Healthcare, Inc.

It is well established that a private corporation will only be held liable under § 1983 for its own unconstitutional policies – and will not be liable under the doctrine of *respondeat superior* for the actions of its employee.  *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir.

1993); *see also Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  To support a claim against a corporation like Advanced Correctional, the Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders*, 984 F.2d at 975–76 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983").

Defendant Advanced Correctional is a private corporation contracted to provide medical services to inmates at Phelps County Jail.  Plaintiff alleges that Advanced Correctional has a policy or custom of providing inadequate medical staff at the Jail.  Plaintiff asserts that Advanced Correctional should use medically trained personnel instead of Jail deputies to distribute medications (including insulin and monitoring blood sugar checks).  He alleges that this policy or custom caused him injury when he was given a large dose of fast-acting insulin by a non-medical Jail employee and then found unresponsive an hour later.  Also, once Plaintiff was found unresponsive, he was not immediately seen by any medically trained personnel nor was emergency services contacted.  Plaintiff alleges sufficient allegations to state a claim against Advanced Correctional Healthcare, Inc.  *See, e.g., Burke v. North Dakota Dep't of Corr. and Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (finding that, for purposes of §1915, a prisoner stated a claim against a corporate medical services provider for a state department of corrections when the prisoner alleged, in relevant part, that the provider's "treatment protocol . . . [was] damaging his health in violation of his Eighth Amendment rights").[6]

---

[6] Plaintiff also complains that it takes several weeks to see a medical staff person after submitting a sick-call request. Doc. 1 at 5.  However, Plaintiff never alleges that he personally experienced this problem, as is required for him to bring this claim on his own behalf.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (Generally, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests[] and cannot rest his claim to relief on the legal rights or interests of third parties.").

**Phelps County Defendants: Sheriff Rick Lisenbe and Jail Administrator Matt Schultz**

Plaintiff alleges that Defendant Matt Schultz, the Phelps County Jail Administrator, failed to adequately supervise the activities at the Jail, including supervision of the medical care provided by Advanced Correctional employees.  As to Defendant Sheriff Lisenbe, Plaintiff alleges that the Sheriff is responsible for the running of the Jail and that he failed to correct Jail problems.

"A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)).  However, a plaintiff may, under a theory of direct liability, maintain a civil rights claim against a prison official whose failure to train, supervise, direct, or control actions of a subordinate is such that it constitutes deliberate indifference to plaintiff's serious medical needs.  *Moyers v. Buescher*, 806 F.Supp. 218, 220 (E.D. Mo. 1992).  "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'"  *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)); *see also Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

In this case, there is no evidence that Advanced Correctional or its employees are subordinates of either Jail Administrator Schultz or Sheriff Lisenbe.  Advanced Correctional is contracted with Phelps County to provide medical services.  Therefore, Lisenbe and Schultz cannot be liable for failing to train, supervise, direct, or control Advanced Correctional or its employees.

---

In addition, to the extent that Plaintiff is trying to allege that Advanced Correctional is responsible for the denial of his insulin, there is no evidence in the record to indicate that the discontinuance of his insulin was anything more than the individual decision of the on-call doctor alone.

However, it does appear that Schultz and/or Lisenbe are responsible for training and supervising the Jail deputy who injected Plaintiff with a large dose of fast-acting insulin and the Jail deputy who found Plaintiff unresponsive after the injection.  The large dose of insulin appears to have injured Plaintiff in that he became unresponsive.  As such, once Plaintiff clarifies who is directly responsible for training and supervising Jail deputies, his amended complaint could state a valid direct liability claim under § 1983 against that individual.

Furthermore, Plaintiff brings his claims against Defendants Lisenbe and Schultz in both their individual and official capacities.  In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Plaintiff states that Lisenbe and Schultz are Phelps County employees.  Doc. 1 at 4. Therefore, Plaintiff's official capacity claims against these Defendants are really a claim against Phelps County.

A local governing body such as Phelps County can be sued directly under § 1983; however, in order to prevail on this type of claim, Plaintiff must establish the governmental entity's liability for the alleged conduct.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).  Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Plaintiff does not allege or provide any factual support for the assertion that any deliberately indifferent actions by Jail deputies were the result of an unconstitutional County policy, unofficial custody, or failure to train.  Without such factual pleadings, Plaintiff cannot state a claim against Phelps County, nor its employees in their official capacities.  *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## V.       Conclusion and Amended Complaint Instructions

Because Plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint in an attempt to cure his pleading deficiencies.  Plaintiff should follow the instructions set forth below by the Court.  Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint, and so it must include all claims Plaintiff wishes to bring.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").  Any claims from the original complaint that are not included in the amended complaint will be deemed abandoned and will not be considered.  *Id.*  Plaintiff should correctly name all defendants in his amended complaint and should include as attachments to the amended complaint, all exhibits that he wants the Court to consider.  Plaintiff must submit the amended complaint on a court-provided form, and the amended complaint must comply with the Federal Rules of Civil Procedure.

Plaintiff should type or neatly print his amended complaint on the Court's § 1983 civil rights complaint form, which will be provided to him.  *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms").  If the amended complaint is handwritten, the writing must be legible.  In the "Caption" section of the

court-provided form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, Plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should fill out the complaint form in its entirety.

In the "Statement of Claim" section, Plaintiff should provide a short and plain statement of the factual allegations supporting his claim. Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in the correct capacity may result in the dismissal of that defendant.

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

When suing multiple defendants, it is important that Plaintiff establish the responsibility of each separate defendant for harming him. That is, for each defendant, Plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for Plaintiff to make general allegations against all the defendants as a group. Rather, Plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *Topchian v. JPMorgan Chase*

*Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.  Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If Plaintiff fails to file an amended complaint on a Court-provided form within thirty (30) days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to Plaintiff.

Accordingly, the Court grants [2] Plaintiff's "Motion to Use Existing Forma Pauperis and Certified Account Printout on File with this Court," construed as a motion to proceed *in forma pauperis*.  The Court orders that Plaintiff shall pay an initial filing fee of $39.87 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

The Court grants [3] Plaintiff's motion for leave to enter exhibits.  The Court also grants [5] Plaintiff's motion to correct the record and the Clerk of Court is directed to update the docket sheet to reflect that Dr. Unknown Burris is actually Dr. Paul Burris.

The Court denies [6] Plaintiff's motion for court to order evidence be preserved by defendants.  The Court orders that the Clerk of Court shall mail to Plaintiff a copy of the Court's Prisoner Civil Rights Complaint form.  The Court further orders that, within **thirty (30) days** of the date of this Order, Plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**Plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.**

So Ordered this 23rd day of September 2021.

_SL R. CR_

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**