UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN HENRY SCRIVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00355-SRC |
| | ) |
| ADVANCED CORRECTIONAL | ) |
| HEALTHCARE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**Memorandum and Order**

Self-represented Plaintiff Shawn Henry Scrivens brings this action under 42 U.S.C. § 1983, alleging that he received deliberately indifferent medical care while detained at Phelps County Jail as an insulin-dependent diabetic. Because Scrivens is proceeding *in forma pauperis*, his Amended Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915(e). The Court finds that Scrivens's Amended Complaint states a claim of deliberately indifferent medical care against defendants Lisa Kelly, Unknown Doctor 1, and Advanced Correctional Healthcare, Inc. However, because Scrivens's allegations do not establish that actions taken by an unknown doctor were the actions of more than one doctor at the Phelps County Jail, the Court dismisses his claim against Defendant Unknown Doctor 2 without prejudice.

**I.      Background**

On September 23, 2021, the Court granted Scrivens *in forma pauperis* status and ordered the payment of an initial partial filing fee of $39.87 under 28 U.S.C. § 1915(b)(1). *See* Doc. 12 at pp. 3–4. The Court has not received this initial payment. The Court again orders Scrivens to pay this initial partial fee. If Scrivens is unable to pay this fee, he must submit a current copy of his prison account statement in support of his claim.

The Court also previously reviewed the claims in Scrivens's original Complaint, Doc. 1, under 28 U.S.C. § 1915(e)(2). Doc. 12 at pp. 4–19. The Court found that Scrivens needed to cure pleading deficiencies in order to state a claim for deliberately indifferent medical care. As discussed below, in his Amended Complaint Scrivens has sufficiently clarified his claims against defendants Nurse Lisa Kelly, Unknown Doctor 1, and Advanced Correctional Healthcare, Inc.

Scrivens is currently incarcerated at Moberly Correctional Center ("MCC"); however, the claims brought in this case are in regard to his time as a pretrial detainee at Phelps County Jail. Doc. 13. In his Amended Complaint, Scrivens brings section 1983 deliberate-indifference claims again four defendants: (1) Advanced Correctional Healthcare, Inc. ("ACH"); (2) Nurse Lisa Kelly; (3) Unknown Doctor 1; and (4) Unknown Doctor 2. *Id.* at pp. 2–4. Scrivens sues the individual defendants in both their individual capacities and in their official capacities as ACH employees.[1] *Id.* at pp. 3–4.

Scrivens alleges that Defendants violated his civil rights by providing him inadequate medical care for his diabetes while he was a detainee at the Jail. Scrivens alleges that ACH is "contracted by the Phelps County Jail to provide medical care for its inmates." *Id.* at p. 13. According to Scrivens, ACH provides healthcare to Jail inmates through two on-call doctors and two dayshift, on-site nurses. He claims that the two ACH doctors provide verbal medical orders

---

[1] Scrivens properly attached a page to his form Amended Complaint in order to list additional defendants; however, it appears he mistakenly forgot to include in what capacity he was suing the two defendants listed on that page – Unknown Doctors 1 and 2. *See* Doc. 13 at p. 4. As directed by the Court in its September 2021 Order, Scrivens named these Unknown Doctors in his Amended Complaint because, although he knows the names of the two ACH doctors serving inmates at the Phelps County Jail, he does not know which doctor is responsible for specific medical care decisions regarding his care (or lack thereof). Because he named the original two doctor defendants in both capacities in his original complaint (Doc. 1 at pp. 3–4) and because he is self-represented, the Court liberally construes his Amended Complaint to bring claims against the two Unknown Doctors in both their individual and official capacities as doctor employees of ACH. *See Edmonds v. Meyer*, 842 F. App'x 13, 13–14 (8th Cir. 2021) (finding self-represented plaintiff sufficiently named the individual defendants in their individual and official capacities where he specified as such on the original complaint but not on the amended complaint).

when contacted, but do not personally examine Jail inmates. Because Scrivens does not know the extent to which each of these doctors are involved in his care, he names them as Unknown Doctors 1 and 2 in his Amended Complaint. Scrivens only names one of the ACH nurses, Lisa Kelly, as a defendant. *Id.* at pp. 13–14.

Scrivens states that he was first diagnosed with diabetes in 2007 and that he has been dependent on insulin to control his diabetes since 2010. *Id.* at pp. 5, 13. On August 17, 2018, Scrivens was arrested and detained in the Phelps County Jail. Scrivens's mother provided the Jail with a 90-day supply of insulin, insulin syringes, and blood-sugar testing materials for Scrivens's use while incarcerated. One of the two Unknown Doctor defendants employed by ACH approved the use of these medical supplies by Scrivens upon intake at the Jail. *Id.* at p. 13.

For "approximately the first six weeks of incarceration" at the Jail, Scrivens "was allowed routinely to check his blood sugar level and received two daily insulin injections." *Id.* at p. 16. During that time period, Scrivens asserts that his diabetes was "under control" but that he did have difficulty "receiving his diabetic snack bags at night . . . and diabetic meals." *Id.* at pp. 8, 16. Scrivens filed seven grievances, dated between September 21 and October 8, 2018, complaining about not receiving an evening diabetic snack bag. Doc. 13-1 at pp. 36–42. Defendant Nurse Kelly responded to six of these grievances by informing Scrivens that the doctor had not ordered him a night snack. *Id.* at pp. 36, 38–42.

On or around October 18, 2018, Scrivens's blood-sugar level spiked and he became ill. Doc. 13 at p. 16. A Jail deputy injected Scrivens's mid-section with a "syringe containing 30 units of fast acting 'REG' insulin" and Scrivens lay down on his bunk. According to Scrivens, the insulin injection caused his "blood sugar to drop to a dangerously low level and he lost consciousness." *Id.* at p. 18. Approximately an hour later, a Jail deputy conducting a security check found Scrivens unresponsive on his bunk. *Id.* at p. 16. The Jail deputy phoned the ACH

3

doctor who was on call at the time; Scrivens does not know which of the two ACH doctors the deputy called. *Id.* Despite the fact that no ACH medical staff was present at the Jail at the time, the Unknown Doctor did not direct the Jail deputy to call emergency services or come to the Jail to personally assess Scrivens's medical condition. *Id.* at p. 17. Instead, the Unknown Doctor discontinued Scrivens's daily insulin injections. *Id.* "At some point later," a Jail deputy gave Scrivens "a large dose of glucose" and he became responsive but weak. *Id.* at p. 18.

Scrivens's daily insulin injections did not resume after this incident. Scrivens states that he became very sick and "lost sight in [his] left eye as a result of being denied insulin." *Id.* at p. 6; *see also* Doc. 13-1 at pp. 54, 61. Also, his "organs deteriorate[d] quickly" and he had "a number of other health related problems from the lack of care/insulin [that he] was denied for so many months at the Phelps County Jail." Doc. 13 at pp. 6, 18. Scrivens states that he suffered many of the common side effects that accompany extremely high or low blood-sugar levels. He lists these possible side effects as including: "dizziness, confusion, combativeness, pallor, diaphoresis, numbness in the extremities, weakness, vomiting, diarrhea, loss of consciousness, coma or death." *Id.* at pp. 15, 18; *see also* Doc. 13-1 at p. 1. Scrivens asserts that ACH medical staff could have resolved his health problems by simply restarting his insulin. Doc. 13 at p. 6.

After Scrivens's insulin injections were discontinued, he began filing grievances on the Jail's kiosk system requesting that his insulin be restarted. *Id.* at pp. 18–19. Scrivens filed thirteen grievances, dated between October 18, 2018 and November 29, 2018, complaining about the discontinuance of his insulin injections. Doc. 13-1 at pp. 47–50, 52–57, 59–61. Nurse Kelly responded to eleven of these grievances. Multiple times she directed Scrivens to fill out a sick-call request form in order to be seen by a doctor or medical staff. *Id.* at pp. 49, 61. In response to Scrivens's requests, Kelly often responded with "see prior reply." *Id.* at pp. 54–55, 57. Scrivens repeatedly complained that his insulin should not have been discontinued without

4

bloodwork or an "A1C"[2] test, and that his blood-sugar levels were no longer being regularly monitored.  *Id.* at pp. 52–55.  Scrivens asserts that Nurse Kelly knew of his serious medical problems and failed to treat them with the medical attention that they required.  Doc. 13 at pp. 15, 19.

Scrivens alleges that on March 7, 2019, he pled guilty in state court on his pending criminal charges so that he could be transferred to the care of the Missouri Department of Corrections ("MDOC") and obtain medical treatment and insulin.  *Id.* at pp. 19–20.  At his plea hearing, Scrivens informed the state-court judge that it had been seven or eight weeks since he had checked his blood-sugar level, 124 days since he had received an insulin injection, and that as a result of the lack of treatment for his diabetes, he had lost sight in his left eye.  *Id.* at p. 19; *see also* Doc. 13-1 at pp. 22–25.  Around this same time, Scrivens's attorney contacted the Jail to try to have Scrivens's daily insulin injections restarted, but was unsuccessful.  Doc. 13 at p. 20.  Scrivens states that he finally received insulin when he was processed at a MDOC facility, approximately seven hours after pleading guilty.  *Id.*

According to Scrivens, there are three scheduled daily medicine pass times at the Phelps County Jail.  However, Scrivens asserts that ACH "does not provide on-site medical staff" to distribute medications at these times—instead, it relies on "random, medically unqualified jail deputies to pass meds/insulin."  *Id.* at p. 15.  Scrivens states that the Jail deputy who injected him with the fast-acting insulin in October 2018, was "not medically qualified to inject inmates with insulin."  *Id.* at p. 16.  Scrivens does not know if the Jail deputy was verbally ordered to inject him by the on-call doctor who was contacted by phone when Scrivens was found unresponsive.

---

[2] According to the American Diabetes Association, the A1C is a "relatively simple blood test" that can be used to identify prediabetes, diagnose diabetes, and "to monitor how well your diabetes treatment is working over time." *American Diabetes Association: Understanding A1C*, https://www.diabetes.org/a1c.

If so, Scrivens alleges that it "was beyond the doctor's scope of medical ability to give a medical order to a non-medical person to provide medical care for [Scrivens]." *Id.*

For relief, Scrivens seeks damages totaling $5.5 million. *Id.* at p. 7.

## II.    Standard

Under section 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe a plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

6

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

**III.     Discussion**

Scrivens asserts that he was "knowingly denied basic medical care at the Phelps County Jail in the form of insulin" despite it being well-documented that he was an insulin-dependent diabetic.  Doc. 13 at p. 21.  The Court finds that Scrivens's Amended Complaint states a claim of deliberately indifferent medical care against Advanced Correctional Healthcare, Inc., Nurse Lisa Kelly, and a single unknown ACH Doctor.  But because Scrivens does not know which doctor or doctors made medical decisions concerning his case, one doctor may have taken all of the alleged actions.  Thus, the Amended Complaint states a claim against one, but not both, unknown doctor defendants.  Accordingly, the Court dismisses Unknown Doctor 2 and directs the Clerk of Court to issue process against Lisa Kelly and Unknown Doctor 1.

   **A.     Deliberate Indifference Standard**

Courts evaluate pretrial detainees' deliberate-indifference claims under the Fourteenth Amendment's Due Process Clause, and evaluate convicted prisoners' deliberate-indifference claims under the Eighth Amendment.  *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  However, this distinction "makes little difference as a practical matter," because the same standard applies in both situations.  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th

7

Cir. 2004) (applying the Eighth-Amendment deliberate-indifference analysis to a pretrial detainee's Fourteenth-Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on an Eighth-Amendment deliberate-indifference claim, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

In this case, Scrivens alleges that Defendants provided deliberately indifferent medical care in the treatment of his insulin-dependent diabetes. Scrivens asserts that he went without insulin, and without basic monitoring and treatment of his diabetes, from approximately October 18, 2018, until he was transferred to MDOC custody on March 7, 2019. Therefore, Scrivens alleges that he went without insulin for approximately 20 weeks or 140 days.

Diabetes is an objectively serious medical need. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (discussing diabetes as a serious medical need as required for a deliberate-indifference claim). According to the Amended Complaint, Scrivens has been dependent on insulin for the treatment of his diabetes since 2010, after receiving his diabetes diagnosis a few years earlier. Scrivens alleges that he suffered from the objectively serious medical need of insulin-dependent diabetes during his time as a pretrial detainee at Phelps County Jail.

B.   **Defendant Advanced Correctional Healthcare, Inc.**

It is well established that a private corporation is only liable under § 1983 for its own unconstitutional policies, and is not liable under the doctrine of respondeat superior for the actions of its employee. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993). To support a claim against a corporation like ACH, Scrivens "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders*, 984 F.2d at 975–76 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983").

Scrivens alleges that Defendant ACH is a private corporation contracted to provide medical services to inmates at Phelps County Jail, and that ACH has a policy or custom of providing inadequate medical staff at the Jail. Scrivens asserts that ACH should use medically trained personnel instead of Jail deputies to distribute medications (including insulin and monitoring blood-sugar checks). He alleges that this policy or custom caused him injury when a non-medical Jail employee gave him a large dose of fast-acting insulin and then found him unresponsive an hour later. Also, once the employee found Scrivens unresponsive, Scrivens alleges that he did not receive care from medically trained Jail personnel or emergency services.

9

Scrivens alleges sufficient allegations to state a claim against Advanced Correctional Healthcare, Inc. *See, e.g., Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (finding that, for purposes of §1915, a prisoner stated a claim against a corporate medical services provider for a state department of corrections when the prisoner alleged, in relevant part, that the provider's "treatment protocol . . . [was] damaging his health in violation of his Eighth Amendment rights").

      C.      **Defendant Nurse Lisa Kelly**

Scrivens asserts that Nurse Kelly knew about his diabetes and failed to treat him with the medical attention that he required. Scrivens claims that the ACH nurses, including Nurse Kelly, are primarily responsible for inmate medical care at the Jail, as they are the only medical staff on site. As the primary medical caregiver, Scrivens alleges that Nurse Kelly was obligated to treat his diabetes and not just pass his medical complaints on to others. Scrivens informed Nurse Kelly about his medical problems and his need for insulin. The exhibits indicate that Nurse Kelly reviewed and responded to multiple of Scrivens's grievances concerning diabetic snack bags, discontinuance of insulin, and lack of blood-sugar monitoring between September and November 2018. Nurse Kelly handled Scrivens's November 2018 grievance stating that he was experiencing "loss of sight in left eye," so she was well aware of his deteriorating health condition. Yet, Nurse Kelly did nothing to provide the needed medical care of insulin. The allegations of the Amended Complaint are sufficient to establish that Nurse Lisa Kelly was aware of and disregarded Scrivens's diabetes.

An official capacity claim against an individual is actually a claim against the individual's employer. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Scrivens alleges Lisa Kelly is employed by ACH as a nurse. ACH is a private entity that contracts with the Phelps County Jail to provide healthcare services to inmates. Thus, his official

capacity claim against Lisa Kelly is actually a claim against ACH itself.  To state a claim against an ACH employee in her official capacity, Scrivens must allege that an ACH policy or custom is responsible for the constitutional violation alleged in that claim.  Construing Scrivens's complaint liberally, he sufficiently alleged that ACH had a policy, custom, or practice of providing inadequate medical staff at the jail, leaving nurses at the jail unsupervised, and failing to ensure that the nurses were following through on their responsibilities—and that Lisa Kelly acted accordingly.  *See Edmonds*, 842 F. App'x at 14.

The Court directs that summons issue as to Scrivens's deliberate indifference claims against Lisa Kelly in her individual and official capacities.

### D. Unknown Doctor Defendants

Scrivens alleges that an unknown ACH doctor's decision to discontinue his twice-daily insulin injections constitutes medical deliberate indifference.  According to the allegations, an unknown doctor instructed a Jail deputy to discontinue Scrivens's insulin after Scrivens was found unresponsive.  This unknown doctor knew that Scrivens had been taking insulin, discontinued its use, and failed to further evaluate Scrivens or provide an order for the reinstatement of insulin injections in the subsequent 140 days.  This is sufficient to state a claim of deliberately indifferent medical care against the doctor who made the decision to discontinue Scrivens's insulin.

Although Scrivens states that ACH employs two on-call doctors for treatment at the Jail, Scrivens admits that he never saw a doctor in person while confined at the Jail.  Scrivens's complaint and attached exhibits do not indicate that both ACH doctors were aware of Scrivens's diabetes and deliberately disregarded it.  To the extent Scrivens is attempting to allege that both doctors are responsible for failing to restart his insulin injections after they were improperly discontinued, the factual allegations of the pleadings do not support such a claim.  There is no

indication that Scrivens made both doctor defendants aware of his medical emergency. Although Scrivens filed many grievances through the Jail kiosk that were responded to by Nurse Kelly, Scrivens was repeatedly told by Kelly to file a sick-call request so he could be seen by a doctor. There is no evidence that Scrivens ever made a request to see a doctor. Also, once Scrivens's insulin was discontinued on a doctor's orders, there is no evidence in the record that Scrivens ever had any contact with either Jail doctor. As such, there are no facts indicating that both doctors actually knew of and deliberately disregarded Scrivens's continuing medical need for insulin. There is only such evidence against the doctor who gave the order to discontinue the insulin.

In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, Scrivens provides sufficient specific allegations to permit the identity of one unknown doctor defendant to be named after reasonable discovery.

Liberally construing Scrivens's complaint, he has sufficiently alleged that ACH had a policy, custom, or practice of allowing non-medically trained personnel to address inmates' medical issues, and that Unknown Doctor 1, an ACH employee, acted in compliance with that policy, custom, or practice by discontinuing Scrivens's daily insulin injections and leaving Scrivens in the hands of non-medically trained jail personnel. *See Edmonds*, 842 F. App'x at 14.

Accordingly, the Court will issue process against Unknown Doctor 1, in both his individual capacity and his official capacity as a doctor employed by ACH, as to Scrivens's deliberate indifference claim. Once medical records reveal the identity of Unknown Doctor 1, Plaintiff must file a motion for substitution of party and provide the correct legal name of this

doctor.  The Court dismisses Unknown Doctor 2 for failure to state a claim upon which relief may be granted.  *See also Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible).

## IV.     Conclusion

Scrivens's Amended Complaint states an Eighth-Amendment deliberate-indifference claim sufficient to withstand initial review under 28 U.S.C. § 1915 against defendants Lisa Kelly, Unknown Doctor 1, and Advanced Correctional Healthcare, Inc.

Accordingly, the Court orders Scrivens to pay an initial filing fee of $39.87 within thirty (30) days of the date of this Order.  The Court instructs Scrivens to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

The Court dismisses without prejudice Scrivens's claims against Unknown Doctor 2, pursuant to 28 U.S.C. § 1915(e)(2)(B), and directs the Clerk of Court not to issue process or cause process to issue upon the Amended Complaint as to defendant Unknown Doctor 2.

The Court directs the Clerk of Court to issue process or cause process to issue upon the Amended Complaint as to defendants Lisa Kelly, Unknown Doctor 1, and Advanced Correctional Healthcare, Inc., with regard to Scrivens's Eighth-Amendment deliberate-indifference claim.  Defendants Lisa Kelly and Unknown Doctor 1 shall be personally served by issuance of summons and service by the U.S. Marshals Service at:  Phelps County Jail, 500 West 2nd Street, Rolla, MO 65401.  Defendant Advanced Correctional Healthcare, Inc. shall be served through its registered agent at:  C T Corporation System, 120 South Central Avenue, Clayton, MO 63105.  The Court orders Defendants to respond to the Amended Complaint within the time provided by the applicable provisions of the Federal Rules of Civil Procedure.

13

An appeal of this Memorandum and Order would not be taken in good faith.  An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 15th day of April 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE